(No. 2173— ▮▮▮▮▮▮▮)

EDWARD BROUGHAM, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 13, 1935.*
*Rehearing granted April 30, 1935.*
*Opinion on rehearing filed April 30, 1936.*

MARTIN K. MILLER, for claimant.

OTTO KERNER, Attorney General, and JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant filed his claim herein on May 9, 1933 representing that on March 3, 1933 while employed by the State of Illinois as a mason laborer under the Department of Public Welfare; that on that date while in the course of his employment he was riding on a construction elevator from the upper levels of a building then under construction at the State Prison at Joliet (Stateville); that the brake of such elevator failed to hold and the elevator dropped with a crash, resulting in "A fracture of the middle third of the Os Calcis and a fragment being detached from the Navicular bone of the ankle"; that a temporary disability resulted, from which claimant at the time he filed his claim expected to lose about four months work. An award in the sum of One-thousand Dollars, ($1000.00) was requested. A Transcript of the evidence taken in said matter has been filed and counsel for claimant and respondent have both waived the filing of Abstracts, Briefs and Arguments. They have also filed a Stipulation as to what the evidence indicates, but as it is the duty of the court to determine what the facts are as disclosed from the evidence, its decision is based thereon, rather than on the Stipulation.

From the testimony in the record it appears that claimant resided in Joliet, Illinois and was on the 3rd day of March, 1933, and intermittently prior to said time, employed by the Department of Public Welfare as a laborer. His wages were $6.00 per day for five and one-half days a week. On the day in question while employed in the construction of the new hospital at the Joliet Prison, and in the course of his duties, he went up to the third floor after some scaffolding on a construction elevator. One of the inmates was operating the engine—apparently the brake failed to work and the elevator hit the bottom with considerable force, throwing the claimant over backwards. According to his testimony he was carried to the hospital and a Prison Doctor, named Dr. Chmelik made an X-ray examination, then told claimant to go home and put ice on his injured right heel and ankle. Ten days later claimant went to Dr. Chmelik and asked about his fracture or dislocation, and the Doctor informed him there was none. Four weeks later he again called on the Doctor, who took a second X-ray and again told him "everything was all right." Two and one-half weeks later claimant, on advice of counsel, consulted Dr. Arthur Schreffler, at Joliet, Illinois. The report of Dr. Schreffler appears in the record as "Exhibit A" and shows that, "He sustained a fracture of the middle third of the Os Calcis, with no displacement of the fragments." The Doctor, in that same report, dated April 18, 1933, further states "It will be another eight or ten weeks before he will be able to do much work."

. After Dr. Schreffler had made the X-ray examination and the above report—Dr. Chmelik, under date of April 21, 1933, made a report of his X-ray examination of March 3, 1933, appearing in the record as "Exhibit B" in which he states "There is a fracture of the Os Calcis in its middle third; there is also a fragment detached apparently from the Navicular bone. Both are in good condition. Healing is proceeding in accordance with the lapsed time. In my opinion Mr. Brougham will be disabled until about May 10, 1933." Under date of January 29, 1934 Dr. Chmelik made a further report stating the nature of the injury to be "Fracture of the Os Calcis in its middle third, fragment detached apparently from the Navicular bone, both are in fair condition. Right Knee: Evidence of Periostitis involving the shaft of the Femur eight inches above the joint. Posterior surface."

Dr. Chmelik further states in said report that "There is a permanent disability"; that "there is considerable atrophy of disuse of the small bones"; and that the case in his opinion was *"properly and adequately treated."* The report is type-written. Someone has also written in ink at a different time and with ink of a different color from the ink used in the signature the following *"75% of leg,"* referring doubtless to the per cent of disability.

The statement by Dr. Chmelik that the case was ade-quately treated is apparently denied by the claimant's tes-timony as above detailed. Neither does the evidence as a whole satisfactorily prove any partial permanent disability.

The claimant, according to the evidence, was unemployed because of said accident, from March 3, 1933 to July 17, 1933. He has been re-employed in the same occupation and at the same wages from the latter date. The evidence shows that he still suffers some pain in his right leg, especially in going down stairs, and that "his right leg is swollen, to a certain extent more than his left leg." Under general medical ex-perience where there is no displacement of fragments in a break of the Os Calcis or Heel, and the latter is properly mobilized, the foot should heal with no permanent disability. In this case Dr. Schreffler reported that there was no dis-placement as evidenced by his X-ray examination six weeks after the date of injury.

The record discloses that claimant, at the time of the in-jury, was the father of three children under the age of six-teen years. Under his wage scale of Thirty Three Dollars ($33.00) per week he would be entitled to a maximum of Eighteen Dollars ($18.00) per week by virtue of the three children under sixteen years of age, such compensation ex-tending over a period of nineteen weeks, or a total of Three Hundred Forty Two Dollars ($342.00). From the record we believe the claimant was justified in availing himself of addi-tional medical care, the cost thereof being stated by claimant to be One Hundred Dollars ($100.00). There is no sufficient showing in the record to justify an allowance for partial permanent disability. An award is therefore made to claim-ant for temporary total disability for nineteen weeks in the sum of Three Hundred Forty Two Dollars ($342.00); for ad-ditional expense incurred One Hundred Dollars ($100.00)— total award Four Hundred Forty Two Dollars, ($442.00).

OPINION ON REHEARING.

MR. JUSTICE YANTIS delivered the opinion of the court:

On February 13, 1935 an award of Three Hundred Forty-two ($342.00) Dollars was allowed claimant for temporary total disability for nineteen (19) weeks on a maximum allowance of Eighteen ($18.00) Dollars per week, and an award for partial permanent disability was denied for lack of sufficient showing in the record to justify same. From the evidence, appearing in the record, the court held that claimant was justified in availing himself of personally selected medical care, and a further award was allowed him therefor in the sum of One Hundred ($100.00) Dollars, making a total award of Four Hundred Forty-two ($442.00) Dollars. A petition for rehearing was filed February 27, 1935. On March 13, 1935 claimant's attorney appeared in person before the court to support orally his petition for rehearing. At that time he requested leave to file an additional medical report and an x-ray picture that had been made prior to the time of the original hearing but not introduced. Allowance was given to introduce these new exhibits, and thereupon the entire record, including the two additional exhibits, were carefully considered on the petition for rehearing. On April 9, 1935 the petition for rehearing was denied and the award of Four Hundred Forty-two ($442.00) Dollars was re-affirmed. Claimant's counsel thereafter contending that he understood he was to have been given an opportunity to take still further testimony, the court in order to remove any question of misunderstanding, vacated the order denying the petition for rehearing and thereupon granted claimant leave to take further evidence. Such additional evidence was filed on May 16, 1935 and the entire record is now before the court for final consideration.

The court has carefully rechecked the record and finds that it did not in its original opinion, as contended by claimant in his petition for rehearing, disregard the stipulation of facts entered into by the parties, but did decline to be governed by the conclusions and suggestions which counsel drew from the facts in evidence; that court did not, contrary to the evidence, assume that the claimant suffered no displacement of fragments as a result of the fracture of the Oscalcis, but based its conclusion as to such fact from all the evidence in the record. Dr. Shreffler in a report dated April 18, 1933 cer-

tified to an examination of plaintiff, and therein stated as follows: "I find that he sustained a fracture of the middle third of the Oscalcis *with no displacement of the fragments.*" Since filing his petition for rehearing, counsel for plaintiff has submitted another report by Dr. Shreffler of an examination of plaintiff made on July 28, 1934, and an examination of that report shows that Dr. Shreffler was, on July 28, 1934, still in accord with the report made by him on April 18th, for in answer to Question 5 as to the location, nature and extent of injury, he states "Fracture through mid-portion of right Oscalcis." In the Sixth (6th) clause of plaintiff's petition for rehearing counsel purports to quote the court as having said "In this case Dr. Shreffler reported that there was no displacement as evidenced by his X-ray examination six weeks after the injury." Counsel mis-states the opinion. The court therein said "After Dr. Shreffler made the X-ray examination and the above report—Dr. Chmelik, under date of April 21, 1933, made a report of his X-ray examination of March 3, 1933, appearing in the record as 'Exhibit B.'" This is a correct statement of the facts in the record and the petition for rehearing confuses the same. In plaintiff's testimony (Page 4) he stated, "He (Dr. Shreffler) gave me a complete examination." Exhibit A is Dr. Shreffler's report of that examination. The next day, April 19, 1933, Dr. Shreffler examined the X-rays. On April 21, 1933 Dr. Chmelik made a report of the examination made by himself on March 3, 1933, which appears in the record as "Exhibit B." The latter report is in direct conflict with what claimant testified Dr. Chmelik had repeatedly told him, to-wit: "That there was no fracture or dislocation." In the supplemental testimony of Dr. Chmelik, filed May 16, 1935, he was asked "So far as the X-ray shows the heel bone is properly healed is it not?" Answer—"yes." Question—"With reference to the Oscalcis —Where is this other bone that was fractured, the Navicular?" Answer—"It was above the Oscalcis (looks at X-ray.) I just can't say. I am not familiar with it." Question— "Was it fractured at the near junction to the heel bone?— Can you tell by looking at the X-ray?" Answer—"Don't know whether it's the nearest part to the heel bone or farther away."

The record as now found, including the supplemental evidence contains some proof of permanent lameness and par-

tial disability of claimant's foot, but the medical evidence taken at different times is so conflicting that the court does not consider itself justified in changing the conclusion heretofore reached. As above stated, an additional award of One Hundred ($100.00) Dollars was originally allowed for medical expense, based upon claimant's testimony that he had not received adequate medical attention from the doctors furnished by respondent and the record as it now stands does not appear to justify a reversal of that award.

The award heretofore allowed is hereby affirmed in favor of claimant in the sum of Four Hundred Forty-two ($442.00) Dollars.

This award being subject to the provisions of an Act entitled, "An Act making an appropriation to pay compensation claims of State employees and providing for the method of payment thereof," approved July 2d, 1935 (Sess. Laws of 1935, p. 49) and being, by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from the General Revenue Fund in the name provided for in such Act.